THE STATE v. MESHEK.

1. **Criminal Law:** EVIDENCE: INSTRUCTION. On the trial of an indictment for murder, two witnesses testified to hearing two shots fired, and one to hearing but one. While the first shot might have been justifiable in self-defense, the second, if fired at all, was fired while the deceased was retreating: *Held*, that an instruction limiting the attention of the jury to the testimony of these witnesses, and ignoring important facts tending to corroborate the negative testimony, was erroneous.

*Appeal from Tama District Court.*

MONDAY, JUNE 9.

INDICTMENT for murder. Verdict, guilty of murder in the second degree, and judgment thereon. The defendant appeals.

*W. G. Thompson* and *Stivers & Leland*, for appellant.

*J. F. McJunkin, Attorney General*, for the State.

SEEVERS, J.—About 12 o'clock in the night of the 8th day of July, 1877, as claimed by the State, an information charging the defendant with a violation of the criminal laws of the State was sworn to and filed before a justice of the peace, who issued a warrant for the arrest of the defendant, and the same was delivered to Charles Whitely, a constable, for service.

1. CRIMINAL law: evidence: instruction.

The evidence tended to show that Whitely, together with Whorley, Surface and Vocon, went to the house of defendant to make the arrest. They arrived there, we judge, shortly after 12 o'clock the same night.

The evidence tended to show the outside door was not fast-

ened otherwise than with a latch, but the door of the room in which the defendant and his son were was locked. No other persons were in the house, or at least the evidence fails to show there were. Whitely knocked on the door of the house and said "hello" a time or two, and the defendant made some response. It thereby became known in what part of the house the defendant was, and Whitely passed around the house to a window in the room where the defendant was in bed. Said window was either open or it was opened by Whitely.

The evidence also tended to show that Whitely spoke to the defendant when he was at the window and told him he was a constable, and had a warrant for his arrest, and laid his hands on the defendant, who said he would not go, and in some way got loose or away from Whitely. The latter then returned to the front of the house, or in that direction, and directed Whorley and Surface to enter the house, when he gave them a signal and returned to the window. Whorley and Surface lighted a lantern, and upon receiving the signal entered the house and attempted to open the door in which the defendant was. Finding it locked they passed out of the house, and testify that when they got out they heard Whitely say to the defendant, and while at the window, that he wanted defendant to go with him to the justice's. Defendant replied he would not, and jerked away from Whitely and shot him with a revolver. Whitely lived but a few minutes thereafter. Whorley and Surface testify that soon after the shot that killed Whitely was fired there was another shot fired. Vocon testifies that he was present and that he did not hear a second shot.

The evidence tended to show that the defendant procured the revolver from a neighbor in the early part of the evening, and, when it was examined the next day, all the chambers were loaded but one. There was a shot-gun in the house, and the State introduced evidence tending to show that the second shot might have been fired therefrom. On the next day after the homicide the gun was examined, and both bar-

rels were found to be empty; and there was evidence tending to show that it had been unloaded for some time, and that there was no ammunition in the house except shot. When the gun was found, after the homicide, it was in the same place it had been for more than a week previous thereto. Such place was in a different room from where the defendant was on the night aforesaid. About half-past 2 o'clock on the same night the defendant, in company with his little boy, appeared at the house of a neighbor, knocked at the door, and desired him to get up. He had on his hat and pantaloons, but was barefooted. He said he had shot a man, but did not know who, and desired his neighbor to go with him and see about it. He also said three tramps came to his house and tried to kill kim, and he told substantially the same story the next morning, when he voluntarily returned to the house and surrendered himself into custody. The defendant is a Bohemian, but can understand and speak the English language.

It is quite evident under the circumstances that the defendant had the right to have the question whether the homicide was committed in self-defense submitted to the jury, and the District Court did so.

The fact that a second shot was fired, if such was the case, was deemed material by the State, because after the first shot was fired Whitely retreated, and however justifiable the first may have been the same could not be said with equal propriety as to the second.

The court instructed the jury as follows:

"15. The confusion and horror attending the scene of the taking of a human life is such that it is easy for the best and most intelligent of men to be mistaken in regard to the facts. Therefore, should you find any difficulty in settling an apparent or actual conflict in the testimony of the witnesses in this case, you will take this for your rule: That a witness who swears positively to the existence of a fact, if of good charac-

ter and of sufficient intelligence, may be believed, although a dozen witnesses, of equally good character, swear that they were present and did not see or hear the same fact. You will, therefore, be permitted in your deliberations to compare the testimony of the witnesses, where it appears to vary, giving heed to their different situations, power of seeing, hearing and capacity of recollecting and relating, and settle such disputed points, if any there are, according to your best judgment, never believing a witness who swears positively to be perjured, unless you are irresistibly driven to such a conclusion. Hence, in the application of the foregoing, if you should find that the witnesses Whorley and Surface testified positively that there was a second shot fired, and the witness Vocon testified that he was present with said witnesses, Whorley and Surface, but did not hear such second shot, though you find and believe said witnesses to be of equal credibility, you will be warranted in concluding that said witnesses, Whorley and Surface, are correct in regard to the fact of the firing of the second shot, and the said witness Vocon is mistaken therein."

This instruction, in substance, directs the jury that for the purpose of determining whether a second shot was fired they are to take into consideration only the affirmative testimony of Whorley and Surface and the negative evidence of Vocon, and that they would be warranted in concluding the latter was mistaken. This, in effect, amounted to a withdrawal of the evidence as to the condition and position of the gun, and that the same had been unloaded previous to the fatal night, and that there was no ammunition in the house with which it could have been loaded. This evidence tended to show that the second shot was not fired with the gun, and, therefore, tended to corroborate Vocon. The jury, we think, would naturally conclude from this instruction that they could not look at the other circumstances, and therefrom determine the fact as to the second shot having been fired.

The Attorney General insists the defendant was not preju-

diced by the foregoing instruction because in another instruction the jury were to "take into consideration all the evidence and pass upon the whole case." This had application to the case as a whole, and had no reference to the particular matter in hand. We think the defendant was entitled to have the jury specifically directed to consider the matters above stated in determining whether a second shot was fired, and whether Vocon or Whorley and Surface were mistaken.

Several other alleged errors are discussed by counsel, as to which we have to say that the court did not, we think, abuse its discretion in refusing to change the venue.

The alleged misconduct of the jury will not probably occur on the retrial of the cause, and the same may be said as to the challenge to a juror which was overruled. And, generally, we may say that we are not satisfied there is any other error contained in the record than the one we have pointed out. For this there must be a

REVERSAL.