THE STATE OF IOWA, Appellee, v. GEORGE WATSON, Appellant.

1. **Rape:** EVIDENCE. Upon a trial under an indictment for rape committed upon a girl of immature years, leading questions may, in the discretion of the court, be asked the girl as to the position occupied by the accused at the time the act is alleged to have been performed, as to any pain caused her by defendant's act, and as to evidences of violence subsequently found upon her clothing.

2. ———: ———: DECLARATIONS. The testimony of a witness, upon a prosecution for rape, that the subject of the rape "told her the whole circumstance," but not relating the circumstances, is error without prejudice.

3. ———: ———: TESTIMONY IN REBUTTAL. Where, upon a trial under an indictment for rape, the prosecuting witness has given explicit testimony to the fact of the penetration of her body, and a physician, who had examined her organs shortly after the act is alleged to have been committed, testifies, upon behalf of the accused, that at the time of his examination he found the hymen "intact" and "without rupture," testimony by physicians for the prosecution as to the condition of the hymen at the time of an examination subsequently made by them, and indicating penetration in fact, is competent as proof in rebuttal.

4.　——: INSTRUCTIONS. A party is not entitled to have a jury instructed as to the law applicable to an issue upon which no evidence has been introduced.

5.　——: ——. A court's charge to a jury which contains correct abstract propositions of law, applicable to the case, but which is defective in not being as specific as might be with reference to the facts of the particular case, will not be regarded as reversible error where the party objecting fails to ask for more specific instructions, and there is no showing of prejudice on account of the defective charge.

6.　——: ——. An instruction which charges the jury to consider and weigh all the testimony and circumstances bearing upon the issues in the case, and then calls special attention to various branches of the evidence, but omits reference to certain important portions of defendant's evidence, is not objectionable as limiting the evidence to be considered by the jury.

7.　——: ——. The fact that the evidence submitted to a jury in an instruction as proper for their consideration in determining the question, whether the testimony of the prosecutrix in a prosecution for rape is corroborated in the manner that the law requires, is not such corroborative evidence, will not constitute the giving of such instruction a reversible error, when the record shows there was other evidence, not referred to in said instruction, that is in fact corroborative.

8.　——: ——. A witness, called as an expert, who has heard the testimony of another expert, given upon the same trial, in the presence of the jury, may be asked to give an opinion upon the state of facts thus heard by him, without the facts upon which the opinion is to be based being put 'to him in the form of a hypothetical question.

9.　——: NEW TRIAL: NEWLY-DISCOVERED EVIDENCE. Newly-discovered evidence which is merely cumulative in its nature will not entitle a party to a new trial.

*Appeal from Dallas District Court.*—HON. A. W. WILKINSON, Judge.

SATURDAY, OCTOBER 25, 1890.

UPON a trial under an indictment for rape, the defendant was found guilty, and from a judgment committing him to the penitentiary for a period of five years he appeals.

*White & Clark*, for appellant.

*D. W. Woodin*, County Attorney, and *John Y. Stone*, Attorney General, for the State.

GRANGER, J.—The alleged rape was upon one Elsie Young, a step-daughter of the defendant, then about eleven years of age. Her statement of the tragical affair is that on the day following Easter Sunday, 1889, her mother had gone to Van Meter, and she went to the seed-house for molasses for the table, and the defendant came in and lay her on some sacks and had intercourse with her; that she called for her younger sister, who came, and the defendant sent her back, and renewed his assault upon Elsie; that this act was repeated in the same place on the next day, and again, some two or three days thereafter, at the barn; that defendant told her not to tell her mother, and that if she did he would give her a horse-whipping; that she first told her grandmother of the affair some two weeks after it occurred.

I.    At the trial of the indictment Elsie Young was a witness, and complaint is made that certain questions to her were leading. Two or three questions will suffice for our ruling upon this point. The witness had stated in a general way what had occurred, and the county attorney, with a view to particulars, said to the witness: "You may state to the jury whether or not there was any blood on your drawers. You may state to the jury whether or not he did hurt you. While you were on the bags, you can tell the jury whether or not George was right over you." These questions were answered in the affirmative. The first and last questions might, in general, be regarded as technically faulty, because in the first the witness might have been left to name what was on her clothing, and in the last to define in her own words the position of George. The second question was entirely proper. It is difficult to see how it could well be framed otherwise. As applied to this case, there could be no just complaint

1. RAPE: evidence.

as to any of the questions. The witness was of tender years; was before the court and jury; and the subject was of exceeding delicacy to her. The discretion of the court was properly exercised. It is not the law that, merely because questions may be answered by yes or no, they are leading. *Woolheater v. Risley*, 38 Iowa, 486. But the rule of that case is not to be accepted with too much liberality, and lead to the framing of questions that merely leave the witness to reflect the language of the questioner by an affirmative or negative answer. Statements of fact, as a general rule, should be in the language of the witness. There are liberal exceptions to the rule to be applied by the trial court. 1 Greenl. Ev., secs. 434, 435.

II. Complaint is made that the court permitted Mabel Young, grandmother to Elsie Young, to state in evidence the particulars of her complaints, but in this respect there is a misapprehension of the record. Under the holding in *State v. Mitchell*, 68 Iowa, 116, the witness had the right to state that Elsie told her what the defendant did,—as that he ravished or had intercourse with her; and more than that the court would not permit in this case. The witness, after the court had told her only to state if Elsie told her that defendant "abused her, or made an assault on her," said: "Yes; she told me. She told me the whole circumstance." It is likely the last clause that appellant complains of, but the circumstances were not related by the witness, and the statement is without prejudice; and, besides, the court had by no ruling admitted it, and the defendant took no steps to purge the record of it, as he should have done. The court also, in its instructions, guarded the jury against the consideration of any statements as to particulars made by Elsie to the witness. An inferential criticism is made as to the remarks of the court in this connection, but the argument designates no particular statement, and we discover nothing erroneous.

III. During the introduction of the plaintiff's rebutting evidence Drs. Calvin and Caldwell were

2. ___: ___:
declarations.

3. ——:——:
    testimony in
    rebuttal.

introduced and gave evidence of having made a personal examination of Elsie Young, and of the condition in which they found her, and appellant's complaint in this respect is that the testimony was not rebutting, and the requirements of the statute had not been observed to render them competent witnesses to prove the indictment. A closely controverted point in the case was as to the actual penetration of the person of Elsie Young. Her testimony was explicit that there was such penetration. The defendant afterwards used as a witness one Dr. Page, who had examined her, who swore that he found her private parts extremely sore and sensitive to the touch, and that the hymen was intact, without rupture. He also gave testimony based on his examination, as to the probable length of time since the injury, it being a theory of the defense that the prosecution was the result of a conspiracy led by Mabel Young, and that the injury was a part of the plan, and of a more recent date than the alleged assault by defendant. The testimony of Drs. Calvin and Caldwell was upon the same subject as that of Dr. Page, both as to the condition of the hymen and of the probable length of time between the injury and the examinations, and the testimony was to quite an extent contradictory; one of them saying: "I found the hymen torn through; the edges red, inflamed; parts of it healed, other parts granulating, or healing, and excessively tender to the touch." Appellant's argument goes more to the value of the testimony to show particular facts than to the question of its admissibility. The testimony was rebutting. Authorities are not very accurate as to the dividing line between what is rebutting evidence, and what is not. The question has received some consideration, as applied to criminal cases, by Mr. Justice WRIGHT, in *State v. Parish*, 22 Iowa, 284, and the holding or reasoning there is not against the action of the district court in this case.

IV. The county attorney, for the purpose of getting from Dr. Caldwell his opinion as to the length of time the injury was inflicted before the examination,

grouped certain facts, and based his question thereon, and appellant claims the facts had no foundation, or at least not sufficient foundation, in the evidence; but we think otherwise. The question seems to have full support in the record when fairly considered. And we also think the objection to Dr. Caldwell's testimony as to the condition of the girl, because the examination was some four weeks after the alleged occurrence, is not well taken. The value of the testimony was for the jury. *State v. McLaughlin*, 44 Iowa, 82; *State v. Teipner*, 32 N. W. Rep. (Minn.) 678; *Pless v. State*, 3 S. W. Rep. (Tex.) 576.

V    There is a complaint that the court did not instruct the jury on the "defendant's theory of the case,"—that there was a conspiracy to prosecute him. Our examination of the record discloses no evidence on which to base such an instruction. Appellant refers to some items of evidence showing the conduct of certain parties, and in some instances misconduct; but, without the claim being made, a reader of the evidence would not think of a conspiracy. There is no evidence tending to show such a fact. While appellant asks instructions on other branches of the evidence, there is none on the question of a conspiracy, which fact tends to strengthen our position.

4. ——: instructions.

VI.    The physicians in their testimony gave opinions based on hypothetical questions, and the court, in its sixth instruction, said to the jury that, to render such opinions of any value, all the material facts embraced in the question must have been established by the proofs, and the complaint as to the instruction is that it does not determine for the jury what facts were material, but leaves the jury to determine that question. No question is made but that the instruction states a correct abstract proposition of law, and one having support in the record. If the defendant desired that an instruction should be given more specific as to the facts of the case, he should have asked

5. THE same.

for it. There is no such defect in the instructions as to indicate prejudice, or that defendant has not had a fair trial. *State v. Tweedy*, 11 Iowa, 350 ; *State v. Helvin*, 65 Iowa, 289. The same holding and authorities apply to appellant's complaint of the seventh instruction.

VII. The ninth instruction is as follows: "The charge of rape against a person is easy to make, difficult

6. THE same.       to prove and more difficult to disprove, and in considering a case of this kind it is the duty of the jury to carefully and deliberately consider, compare and weigh all the testimony, facts and circumstances bearing on the acts complained of, and the utmost care, intelligence and freedom from bias should be exercised by the jury in the consideration thereof. The time and place of the alleged acts ; relation of the defendant to the said Elsie Young, upon whom the assault is alleged to have been made; her age and intelligence, strength and physical development; his influence and power over her, if any; her condition thereafter, together with the condition of her clothes ; evidence of injuries, if any, upon her person ; appearance of the same when examined ; the time since said injuries appeared to have been made ; the length of time after the alleged transaction before complaint was made by her ; the place where said acts are alleged to have been committed ; the corroborating evidence, if any ; what was said by him, if anything, to the little girl, Ellen May Watson, at the time of the alleged acts; what, if anything, she, Ellen May Watson, saw and heard at the time,—together with all the other facts and circumstances of the case, as the same have been developed and established by the proof in the case, should be considered by you while you are considering whether the defendant is or is not guilty of the crime charged."

It is said that this instruction is in conflict with the rule given in *State v. Meshek*, 51 Iowa, 308, in that it gives undue prominence to facts relied upon by the state, and leaves out of consideration by the jury facts important to the defendant. The appellant refers to

the fact that Dr. Page testified that the hymen was not broken, and also calls attention to the testimony that Mabel Young "drilled" Elsie Young and her sister as witnesses. In the *Meshek case* an instruction was disapproved because the effect of it was to exclude from the consideration of the jury certain evidence proper for the determination of an important fact in the case. No such objection can be urged to this instruction. It does call attention to particular and important facts, but has no such effect as limiting the evidence to be considered in the finding of any fact in the case. So far as the condition of the hymen is concerned, it is silent, as it is with regard to many other·incidental questions in the case, but none are excluded in effect because not mentioned. The mention of such facts in instructions is not required of the court. *State v. Miller,* 65 Iowa, 60.

VIII. The court's twelfth instruction was with regard to the necessary corroboration of Elsie Young, and is as follows: "The fact of the injuries of Elsie Young, if any, or the fact that a rape had been committed upon her by some one, would not be such corroborative evidence as the law requires to conne* the defendant with the commission of the offense, but such connection must be shown by other facts and circumstances tending to connect the defendant with the commission of the act charged. The corroborating evidence required to warrant a conviction is evidence tending to strengthen and corroborate the evidence of the said Elsie Young; and to point out the defendant as the person who committed the offense, if any offense was committed. And upon the question of the corroboration of her, the said Elsie Young, you should consider the time and place where said offense is alleged to have been committed ; whether or not he has been proven to be with the said Elsie Young at the time of said rape; whether or not the little girl, Ellen May Watson, was present at the time ; what, if anything, he said to the little girl, Ellen May Watson, together with his conduct and appearance at

7. The same.

the time,—together with all the other facts and circumstances of the case, as the same have been shown and established by the proof."

It is urged that none of the facts grouped in the instruction " corroborate or tend to corroborate the prosecution," because Ellen May Watson says that the same thing had occurred "both before and after the alleged rape." But there is more of her testimony, and it is to be considered in connection with the testimony of Elsie, who says that when the assault was being made upon her she called for her sister, Ellen May. Ellen May testifies that she heard a cry, and thought it was her little brother Walter at the barn, and started to go there, and defendant stepped out of the seed-house and sent her back; that the seed-house was small, and no room to play in it; and he had at other times done the same thing. When he came out this time she had not reached the seed-house, and was not going there, but past there, to the barn. The testimony only justifies the belief that when defendant had sent Ellen May away from the seed-house, before or after, it was when she was there for play, and, there being no room, he would send her away. It is somewhat strange that at this time, when she had not offered to come in, he should leave his work to open the door, and threaten to whip her if she did not go back. Admitting the statements of Ellen May to be true, there is little room to doubt that Elsie was calling from the seed-house to her; and no doubt that Elsie and defendant were at the time in the seed-house; that Ellen May was sent back, as she says,—and then let it be conceded, as the jury might find, that the crime of rape was committed, and we think there is corroborative evidence tending to connect the defendant with the commission of the offense.

IX. Appellant says there should be proof of penetration, and urges that there is none, because Dr. Page says there could not have been penetration in this case without a rupture of the hymen, and that there was none. But the testimony of Dr. Page is not conclusive.

There was testimony that there was a rupture.  It was
a question for the jury.

X.   When Dr. Caldwell was on the witness stand,
the county attorney, with a view to obtaining his, opinion
as to the length of time since the injury,
**8. THE same.** and on the same state of facts on which Dr.
Page had given his opinion, asked the witness if he
heard Dr. Page's testimony, and he answered, "Yes."
Counsel then asked: "You heard him describe the
condition of the girl when he examined her?  *A.*  Yes.
*Q.*  Now, under such circumstances as he described,
would it be possible for a physician to tell, with any
reasonable degree of certainty, as to how long prior to
the examination the injury had been inflicted?"  The
question was answered against the objection of the
defendant, and we meet a question somewhat new and
difficult.  The complaint is that the question should
have grouped the facts and not have left them to the
recollection of the witness.  The method claimed is the
one in general practice, and, as a rule, to be commended.
But we must determine if the rule is imperative.

We are referred to the case of *People v. Aikin,*
33 N. W. Rep. (Mich.) 821, as supporting appellant's
view, and that the ruling of the district court is errone-
ous.  If the effect of the holding in that case is to be
limited by the record on which the ruling was made, it
is no authority for our guidance.  In that case the wit-
ness had read the testimony of another physician in a
*post-mortem* proceeding, and on the trial of an infor-
mation for manslaughter, after stating that he had read
such testimony, and knew what the doctors had there
stated, he was asked to state his opinion as to a phys-
ical condition, based on such testimony, and the court
held the question improper.  In that case the jury had
no knowledge whatever of the fact upon which the
opinion was sought to be based, and of course the opin-
ion could not aid to a conclusion from such facts.  The
facts upon which the hypothetical question is based, or
which serve as the ground-work of the opinion of an
expert witness, are all important to the end desired.

We quote as follows from the opinion in that case : "The facts as testified to by Dr. De Camp, as to this particular condition of the parts named, should have been stated to the witness. Otherwise the jury could not know upon what facts Dr. Maxim was stating his opinion. An expert can never be safely permitted to state that he has read or heard the testimony of a witness or witnesses, and then base his opinion on such testimony, without stating the particular points of the evidence, the facts upon which he rests his conclusion. There is no reputable authority for any such method of examining an expert witness." It is but fair, in applying the language of the court in that case, to limit it to the fact of the witnesses having read or heard the testimony of witnesses in other proceedings, as was the fact in that case, for the ruling is applied to a state of facts in which "the jury could not know upon what facts the doctor * * * was stating his opinion." If the situation is such that the jury knows the facts upon which the opinion is founded, the reasons for the holding in the Michigan case do not exist. Certainly there is no particular merit in the facts being stated in the question, if known as well without; and that, it seems to us, is the controlling thought upon which the point is to be ruled. Are the facts known to the jury ? If so, the case has every advantage that could result from their being stated in the question. In *Butler v. Insurance Co.* 45 Iowa, 93, this court had under consideration the competency of a question to an expert witness, although not directly presenting this question ; and the court at least intimates that, with the facts as in this case, it might hold to the same rule as did the district court in this case. In that case the question did not assume the statements in the testimony heard by the expert witness as facts, but left the witness to draw his conclusion on a question of sanity from such conclusions and his own knowledge. The court said : "We might hold the ruling correct if the questions had been put conceding the testimony to be true, or in some way indicating that the witness was not left to give his opinion of

the testimony." The question in this case is not open to such a criticism.

It seems to us that no arbitrary or unyielding rule should govern in the production of this class of evidence. Keeping in view what should be as a basis for an opinion, and the district court in its attainment may exercise a reasonable discretion. If a witness states to the jury particular facts in the presence of an expert witness on which the expert is to state his opinion, and the latter follows the former while the facts are fresh in the minds of the jury, a rule that would require the facts to be again stated would certainly be of doubtful utility. If either party doubts that the facts are understood, the witness may be asked to state them, and thus avoid any objection that could be urged. In this case the jury had heard the statements of Dr. Page but a short time before, and there is no pretense in the record or argument of even a doubt that the facts were understood. The question for us is, is it absolutely essential that the facts should be embodied in the question? We think not, and that there was no error in the ruling of the district court. This conclusion has support in *Wright v. Hardy*, 22 Wis. 348, and in *Dwinnell v. Abbott*, 43 N. W. Rep. (Wis.) 496. The rulings in *State v. Felter*, 25 Iowa, 67, and *Muldowney v. Illinois Cent. Ry. Co.*, 39 Iowa, 615, are not upon the grounds that the facts were not stated in the question, but because the question substituted the conclusion of the witness for that of the jury.

It will be understood that we do not hold that in cases where a number of witnesses are examined upon a given question in issue—as, for example, when the alleged insanity of a person is interposed as a defense in a criminal case—it is allowable to call expert witnesses and ask them if they have heard the testimony in the case, and ask of them their opinion of the state of mind of the person charged. Such a course of examination might put the witness in the place of the jury, and require him to determine questions of fact from conflicting evidence, when the opinion of the expert should be based on admitted or assumed facts. In all cases where

the facts on which the opinion is to be based are in dispute, the hypothetical form of question should be used. And such, we believe, has been the general practice in the state. In this case the question propounded to Dr. Caldwell was directed alone to the testimony of Dr. Page as to the condition of the girl when examined by him, and there was no dispute as to the facts testified to. In such a case the court could safely permit the expert witness to state his opinion on the facts as he had heard them from the witness but a short time before.

XI. Some other questions are argued, which we have examined, and discover no error. To our minds, the verdict has support in the evidence. The newly-discovered evidence on which a new trial is asked is cumulative only, and, as held in *State v. Bowman*, 45 Iowa, 418, the statute makes no provision for a new trial on that ground. It does, however, state the causes for which new trials may be granted in criminal cases. The judgment below is AFFIRMED.

9..——: new
trial: newly-
discovered
evidence.