## STATE OF IOWA v. ALBERT WICKLIFF, Appellant.

**Seduction:** EVIDENCE. In a prosecution for seduction, alleged to have taken place in March, under promise of marriage, in which the state claimed that the intimacy between the defendant and prosecutrix continued until June 12, or later, it was not error to admit evidence of the birth of a child February 28, following.

SAME. In a prosecution for seduction, where a witness testified that he kept company with the prosecutrix and that one night he was with her till eleven o'clock, it was error not to permit him to state whether she treated him as her suitor.

CROSS-EXAMINATION. The mother of prosecutrix testified that one S. was at her house one night with prosecutrix, and in speaking of defendant's attentions she stated that "no one else was keeping company with her at the time." No time was stated in either case. *Held*, that it was not error to refuse to permit her to state what time in the evening S. left that night, and whether the family had retired.

SAME. A relative of prosecutrix testified that in a conversation with defendant, in which he referred to one B. as one who might be the guilty person, she said: "We would like to see B. ourselves. We could have use for him." *Held*, that the refusal to allow the witness to be asked on cross-examination what she meant by the quoted statement was proper.

DISCLOSING PURPOSE OF QUESTION. In prosecution for a seduction the court refused to allow defendant to ask prosecutrix the questions: "You kept company with J. prior to your keeping company with (defendant), did you not?" and "When did you cease keeping company with J., if you ever did?" *Held*, proper, in the absence of any disclosure of the purpose of the inquiry.

CONFLICTING EVIDENCE ON APPEAL. Though on appeal in a seduction case there is much doubt under the evidence of the previous chastity of the prosecutrix, and her conduct appears in many respects to have been incompatible with the existence of a promise to marry, a verdict of guilty will not be disturbed.

**Practice:** LEADING QUESTION. In a prosecution for seduction, a question by the state, requiring prosecutrix to state whether or not

defendant ever made to her a promise to marry, is not objection-
able as leading.

*Appeal from Marion District Court.*—HON. J. H. APPEL-
GATE, Judge.

WEDNESDAY, OCTOBER 2, 1895.

Indictment for seduction. Verdict of guilty,
and judgment thereon. The defendant appealed.—
*Affirmed.*

*Hays Bros.* for appellant.

*Milton Remley,* attorney general, for the state.

Granger, J.—I. The alleged seduction took place
about the sixth of March, 1892. On the twenty-eighth
of February, 1893, the prosecuting witness, one Carrie
McElrea, gave birth to a child. As a witness she
stated that she first met the defendant in December,
1891; that he took her home from a Christmas tree on
December 24, 1891, and remained with her until 12
o'clock; and that after that they were together "like all
young people are" till the last of February or the first
of March, when he promised to marry her, and fixed the
time for their marriage in December following, and
that because of this promise she consented to sexual
intercourse with him. It appears from her testimony
that her intimacy continued until June 12, 1892, at
which time she claims to have become pregnant. Her
testimony shows that their talk of marriage continued
until as late as September, 1892. The defendant was
a witness at the trial, and denied any promise or talk
of marriage, but said nothing about the fact of the
intercourse.

The assignments of error bring in question the
rulings of the court on the admissions of evidence.
Appellant complains because the court permitted the

state to prove the birth of the child February 28, 1893, because it in no way tended to prove the fact of seduction in March, 1892. The claim of the state is that illicit intercourse between the prosecuting witness and the defendant continued as late as June 12, 1893, and even later, and that the defendant is the father of the child. In *State v. Mackey,* 82 Iowa, 393[48 N. W. Rep. 918], which was an indictment for seduction, it is said: "The state was permitted to show that the defendant continued to have sexual intercourse with the prosecutrix for months after the first connection. It is true, if the prosecutrix was seduced, the crime was complete when she first surrendered her person to defendant; but subsequent acts were proper to be considered by the jury in determining whether the criminal intent existed at the first act, and whether the defendant in good faith intended to perform his promise." It is there held that such acts may tend to prove that there was seduction. The birth of the child establishes the fact that there was intercourse at some time, and, if the jury should believe that it was with the defendant, it would be corroborative of the testimony of the prosecuting witness as to their criminal intimacy, and tend to prove the offense charged. We think the testimony was properly admitted.

II. There is a complaint that the court refused to permit the defendant to show that other men were with the prosecuting witness about the time she became pregnant, as tending to show that defendant was not the father of the child. It cannot well be questioned but that the evidence of that character was proper. One Merriman testified that he kept company with her the fore part of 1892, and of keeping her company one night in June, he thought. He said he was with her till eleven o'clock, and "after the folks had gone to bed." He was asked to state

her demeanor towards him,—whether or not she fon-
dled, caressed, and embraced him; whether or not she
put her arms around him, and kissed him; and whether
or not she treated him as her suitor.    These questions
were excluded as incompetent or immaterial.    We
think they should have been answered, as the answers
might bear directly on the fact of whether she was at
that time engaged to the defendant.    However, fol-
lowing these rulings, the witness said:    "The night I
kept her company we sat close together.    I had my
arms around her.    She made no resistance to my
embraces.    I kissed her."    The questions leading to
this testimony do not appear in the abstract, and we
understand it to be a statement of what occurred on
the night in question.    The testimony seems to have
been admitted finally without objection.    We notice
that the questions refer to her conduct towards him,
and the testimony to his conduct towards her, and her
demeanor because of it; but we cannot think that such
a distinction was maintained by the court, and hence
we think that the testimony presents the facts.    In
view of this, there was no prejudicial error.

III.    Sarah McElrea is the mother of the prose-
cuting witness, and says in her testimony:    "Ulrick
Speed was at our house one night with Carrie, and
May Mendenhall was with Sam Russell.    I do not
know whether they were in a buggy or not."    She was
then asked:    "Can you tell what time in the evening
it was that night when Ulrick Speed left?"    And also:
"Had the family retired for the night before Mr. Speed
left?"    The court excluded the questions as immate-
rial, or not proper cross-examination.    The rul-
ing was correct.    It is claimed that she had
before said that no one else than defendant was
keeping company with Carrie at the time. and that it
was proper cross-examination on that point.    In her

direct testimony, speaking of the defendant's atten-
tions to Carrie, she said, "No one else was keeping com-
pany with her at the time." That is all of her direct
testimony on that subject. Had the questions
excluded been answered, there could have been no
contradiction of the fact stated on the direct exami-
nation, for neither her testimony as to Speed nor the
questions refer to the time of his attentions to Carrie.
They fix no time. The fact that the testimony after-
wards disclosed the facts more definitely would not
render the ruling erroneous, if correct when made.
There was no error in the ruling.

IV. The prosecuting witness was asked by the
state whether or not the defendant ever made to her a
promise of marriage. The question was objected to
as suggestive, by which is meant leading. We
think not objectionably so. It is true that it
could be answered by "Yes" or "No" but that
does not of necessity make it leading, and the question
did not indicate which answer was desired. *State v.
Watson*, 81 Iowa, 380 [46 N. W. Rep. 868]; *Woolheather
v. Risley*, 38 Iowa, 486.

V. During the direct examination of Sarah
McElrea she said that she told defendant, in a conversa-
tion she had with him, wherein defendant had referred
to one Sell Burrell as one who might be the guilty
party: "We would like to see Sell Burrell ourselves.
We could have use for him." She was asked on
cross-examination what she meant by that, and
the question was excluded, and properly so. The
question only called for the purpose she (the witness)
had in asking the question. Her meaning or purpose
was of no moment whatever. It was not a fact that
could affect either party to the suit.

VI. The record shows the following in the cross-
examination of the prosecuting witness: "Q. You

kept company with Clayton Jones prior to your keeping company with Albert, didn't you? (Objected to by state. Sustained. Defendant excepts.) Q. When did you cease keeping company with Clayton Jones, if you ever did? (Objected to as incompetent, immaterial, and not cross-examination. Sustained. Defendant excepts.)" Complaint is made of the rulings, and it is said that they bear on the fact of previous chastity of the prosecutrix. The questions, of themselves, do not indicate such a bearing. They indicate an inquiry about matters prior to the meeting the defendant; and, if the intention was to pursue the inquiry with a view to such a purpose, as is indicated in argument, it should have been made more manifest. The court should not be adjudged in error for not assuming such a purpose.

VII. It is lastly urged that the verdict is without support in the evidence. That the defendant had intercourse with the prosecuting witness is not doubtful. The doubts arise on the question of her previous chastity. In this respect the proof is such as to make the question one of much doubt, but it was a question for the jury. That she was indiscreet in many particulars is not to be questioned. She was a girl some sixteen years of age, and evidently without a comprehension of many of the proprieties observed by and demanded of her sex. The claim of previous unchastity is based on inferences drawn from her conduct, and not on any known act of intercourse, or any direct proof of it. The case, in this respect, is equally as favorable to the state as State v. Knutson, 91 Iowa, 549 [60 N. W. Rep. 129], and other cases determined in this court. In this connection it is further urged that the evidence as to the promise of marriage, which is the only act claimed to be employed to secure the intercourse, is not sufficiently proven. The testimony of the defendant and the prosecuting witness is in plain conflict on that question. It

is, however, urged that her conduct and other facts so conclusively show the fact to be untrue that the verdict should not be permitted to stand. While it is true that her conduct, in many respects, was quite incompatible with the existence of such a relationship, it was not so much so as to make it conclusive against her claim. The judgment of the district court is *affirmed*.