STATE OF IOWA, Appellee, v. EDWARD BURNS, Appellant.

Seduction:    VARIANCE IN NAME OF PROSECUTRIX.    Formal errors 1    and verbal variances in an indictment which do not mislead or prejudice the accused are treated as immaterial, and in a prosecution for seduction if the accused comes into court, knowing whom he is charged with having seduced, a variance in the name or even a wrong name of the prosecutrix is not ground for setting aside a conviction, under Code, section 5286.

**Absence of the Court:** ARGUMENT.   It is not error for the judge during the argument of a criminal case to leave his desk and at or near the door of an adjoining room dictate his instructions to the reporter, where there is no showing that the. same interfered with the argument.

**Leading Questions.**   Permitting the prosecutrix in an action for seduction to answer leading questions is largely discretionary with the court, who is governed by the nature of the issue, age, experience and intelligence of the witness.

**Affection for Accused.**   In a prosecution for seduction, the testimony of prosecutrix that she entertained an affection for the accused and was willing to become his wife is admissible.

**Remarks of Court:** APPARENT SYMPATHY.   On the examination of the prosecuting witness in an action for seduction she appeared diffident, and the court remarked "Speak out louder, my girl; now tell them what was said, my girl".   *Held*, not prejudicial under the circumstances of the case.

**Evidence:** CORROBORATION.   Evidence in an action for seduction considered, and held to corroborate the prosecuting witness sufficiently to sustain a verdict of guilty.

**Improper Argument of Counsel.**   On a prosecution for seduction, counsel for the state in the closing argument said defendant "ought to have married the prosecuting witness; that he ought to have said to her 'that child is blood of my blood, flesh of of my flesh,' and married her, and then his old gray haired father and mother would have had no cause to mourn.'' *Held*, that in view of the fact that counsel for defendant had previously referred to the "gray haired father and mother," and that the court instructed that refusal to marry was not evidence of guilt, the error was cured.

*Appeal from O' Brien District Court.*—HON. JOHN F. OLIVER, Judge,

WEDNESDAY, APRIL 8, 1903.

DEFENDANT was tried upon an indictment charging him with the crime of seduction, and having been adjudged guilty, appeals.—*Affirmed.*

*W. D. Boies* for appellant.

*C. W. Mullan*, Attorney General and *C. A. Van Vlech* Assistant Attorney General, for the State.

WEAVER, J.—The indictment charges the seduction of Mary Ellen O'Grady. Upon the trial the prosecuting witness gave her name as Nellie O'Grady, and was so named

1. VARIANCE in name of prosecutrix. and called by other witnesses who spoke of her in testimony. It is argued that this is a fatal variance and requires a reversal. The rule of law which requires an indictment for seduction to state the name of the woman charged to have been seduced is intended to apprise the accused of the identity of the person thus alleged to have been wronged. In modern criminal practice, merely formal errors and verbal variances, which, it is apparent, could not have misled or prejudiced the accused, are treated as immaterial. That the variance here complained of comes within this description is too clear for controversy. It is a matter of common knowledge that a girl or young woman bearing the name of "Ellen" is often if not usually called "Nellie" by her friends and acquaintances, and until she reaches considerable maturity of years she is rarely spoken of or addressed by any other name; and in the case before us there is not even a pretense that the defense was in any manner surprised by the production upon the witness stand of "Nellie" instead of "Mary Ellen." It is the identity of the person to which the indictment should direct the mind of the accused, and if that is accomplished, and he comes into court knowing to a moral certainty whom he is charged to have seduced, a slight variance in the name, or even the use of a wrong name, affords no ground for setting aside a conviction. *State v. Carnagy*, 106 Iowa, 484. Under the more technical rules observed in former years, the objection here raised by appellant could, perhaps, be sustained; and many authorities from other jurisdictions, and especially among the older precedents, could be, and are in fact, cited by counsel in support of the position, but they are not in harmony with the later and more reasonable rule.

Our statute provides (Code, section 5286) that where the charge in the indictment involves an injury to a person and the description is in other respects sufficient to identify the act, an erroneous allegation as to the name of such person is immaterial. Following this provision, it has often been held that the use of an incorrect name will not vitiate an indictment. *State v. Emeigh.* 18 Iowa, 122; *State v. Carr*, 43 Iowa, 418; *State v. Emmons*, 72 Iowa, 265; *State v. Williams*, 20 Iowa, 98. Appellant seeks to take this case out of the rule established by our previous decisions, because, as it is said, no witness expressly identified Nellie O'Grady as Mary Ellen O'Grady, but we cannot regard this objection as sound. The identity is sufficiently evident without other explanation than was afforded by the circumstances developed on the trial. If, for instance, an indictment gives a Christian name as "Catherine," and the person, when called to the stand, gives her name as "Kate," or if the name charged is "Caroline," and she calls herself "Carrie," every one understands the identity of these appellations without the aid of witnesses; and this is no less true of "Ellen" and "Nellie." The record presents no error in this respect.

II. Complaint is made that during the argument of counsel the judge presiding was absent from the court room, dictating instructions to the reporter, and while so 2. ABSENCE of employed could not hear what was being said the court: argument. and done in the presence of the jury. The point made does not appear to be sustained by the record. It is shown by the bill of exceptions that the judge left his desk, and went to a door leading into an adjoining room, where the reporter was employed, and, standing in or at the door, dictated to the reporter, in a low tone, the charge to the jury. He was in a position at all times to have an oversight of the courtroom, and to rule promptly upon any question of order or procedure which might arise in the progress of the argument. Appellant does not

seriously question this statement, but insists that the act
was prejudicial, because the judge was "absent to that
extent that he could not have heard and comprehended
what was being said by counsel, because he was so engaged
that it was impossible." It is also further said that the
court should not dictate its instructions in the presence of
the jury, and thus distract the jury's attention from the
argument of counsel. As to the first point, we think
there is no law or rule of practice which makes it reversi-
ble error for the court to fail to hear and comprehend the
argument of counsel. The most attentive and observant
court is not always able to accomplish that desirable end,
even when the argument is directed to itself; and certainly
it should be regarded no lapse from judicial propriety, if,
during an argument to the jury, the judge, while remain-
ing in direct supervision of the court room, turns his atten-
tion to the preparation of his charge. We can understand,
of course, that a judge dictating instructions as indicated
in the present instance, could do so in such loud voice and
obtrusive manner as to seriously interfere with the
argument and afford just ground of exception, but no such
gross breach of decorum has been here shown.

III. Error is assigned upon the rulings of the trial
court permitting the prosecuting witness to answer certain
questions objected to as leading. It is unnecessary to
quote the record in this respect. Many of the
questions were undoubtedly leading, but the
rulings are not therefore, of necessity, erroneous. *State
v. Wickliff*, 95 Iowa, 390. The objection here made is
addressed peculiarly to the discretion of the court. Much
depends upon the nature of the issue being tried, and upon
the age, experience, and intelligence of the witness. In
a case of this kind it is a matter of frequent occurrence
that the prosecuting witness must, of necessity, be led to
some extent, in order to obtain her story at all. If she
have any degree of native modesty remaining, the

3. LEADING
questions.

extremely unpleasant prominence of her position upon the witness stand before court and jury, and in the presence of the curious crowd, giving publicity to her own shame, tends to make her reticent, and to confine her answers to those which are extracted by more or less persistent and leading questions. The presiding judge can see and estimate the situation and circumstances as we cannot, and can be trusted, as a rule, to apply the proper check whenever the right to so examine the witness is being abused to the prejudice of the defendant. We have examined each of the questions complained of, and think the rulings of the trial court were correct.

The prosecuting witness was also allowed to testify that at the time of the alleged seduction she entertained an affection for the accused, and was willing to become

4. AFFECTION for accused. his wife. It is said that this is a mere expression of sentiment—a conclusion—and therefore incompetent. The existence of a sentiment may be a material fact. It often happens that matters pertaining to the mental and emotional nature of a witness are pertinent subjects of inquiry. The usual theory of the state in prosecutions for seduction is that the woman's love has been won by the alleged seducer, and that through such affection she has been led to the illicit intercourse. The fact of such affection, if it existed, is of the highest materiality, and no good reason is suggested why she may not testify to it. It is no objection to say that the truth is hidden in her own breast, and that no one can deny it as a matter of knowledge. The same is true as to the fact of physical pain and suffering in an action for personal injury, and as to the fact of belief and reliance upon false representations in an action for fraud, yet no one would think of denying the right to prove these things by the direct testimony of the party. No authority is cited holding to the contrary, and, so far as we know, none can be found.

IV.   In the examination of the prosecuting witness, her answers were evidently given in low and indistinct tones, and with considerable hesitation; and the court on

5. Remarks of court: apparent sympathy.

one occasion addressed a remark to her, saying: "Speak out louder, my girl.   They cannot hear you"; and again: "Now tell them what was said, my girl."    The use by the court of the expression "my girl" is alleged to have been prejudicial to defendant, in that it indicated a sympathy for the prosecuting witness, and tended to impress the jury with the thought that the witness was a mere child, when in fact she was a woman over twenty years of age.    Words like these here objected to depend for their force and effect very largely upon the circumstances under which they are spoken.    It is apparent from the record that the witness testified with much diffidence, and it was entirely proper that the court should avoid increasing her embarrassment and agitation by any harsh rebuke or severity of manner. The form of address was unfortunate, as being open to possible misconstruction; but, in view of all the circumstances disclosed by the record, we cannot believe the intent of the court was misunderstood by the jury, or that this circumstance had any effect upon their verdict. Other remarks of the court were excepted to, and have been discussed in argument, but the objections are without merit.

V.   Question is raised as to the sufficiency of the corroboration of the complaining witness.   The corroboration was ample.    The defendant, as a witness in his own

6. Evidence: corroboration.

behalf, made no denial of the alleged intercourse with the prosecutrix, but contented himself with denying that he ever promised to "marry her or protect her, or anything of that kind."    On cross-examination he admitted that he had visited or accompanied the prosecuting witness, and had put his arm around her and kissed her "several times."    The mother swears that

she was present when the defendant was approached by
her daughter in reference to the charge made against him,
and that he said, "I know that I am guilty, but to marry
you I never will," and at the same time offered her money
with which to "go away and get rid of the child." Other
testimony tended to show that after being indicted he
offered one Starr $50 to become a witness in his behalf,
and testify that he (Starr) had had intercourse with Miss
O'Grady. Certainly, if the jury believed all this evidence,
no other or stronger corroboration was needed to justify
the verdict.

VI. Finally it is said that there was prejudicial mis-
conduct on the part of the counsel for the state in his
argument to the jury. The bill of exceptions shows that,
7. IMPROPER ar- in the closing argument by Mr. Herrick for
gument of
counsel.   the state, he said to the jury, in substance,
that defendant "ought to have married the prosecuting
witness; that he ought to have said to her, 'That child is
blood of my blood, flesh of my flesh,' and married her,
and then his old, gray-haired father and mother would
have had no cause to mourn," and other language to the
same effect. Objection was raised by defendant to this
line of argument, and Mr. Herrick sought to justify it by
showing that counsel on the other side had attempted to
excite compassion for the defendant by calling the jury's
attention to his gray-haired father and mother, upon whom
the conviction of the son would bring sorrow and shame.
The court here suggested that argument along these lines
had perhaps reached the limit of propriety, directed the
counsel to pursue it no farther, and instructed the jury
that defendant's refusal to marry the prosecutrix was not
to be taken as evidence of guilt. The record in this
respect discloses no misconduct on the part of counsel for
the state. Testimony of the refusal to marry had been
given upon the trial without objection, and evidence
which has been admitted by the court is a legitimate sub-

ject of comment in argument.    True, it did not tend to establish guilt, but we do not understand counsel to have been claiming any such effect for it.    According to the testimony of the mother of Miss O'Grady, the refusal to marry the daughter was a part of the same sentence in which defendant acknowledged his guilt of the charge made against him, and reference to the one could scarcely be made without mention of the other.    The comments thereon may or may not have been logical and just, but that is something that the court cannot assume to control. Within reasonable limits, the language of counsel in argument is privileged, and he is permitted to express his own ideas in his own way, so long as they may fairly be considered relevant to the case which has been made.    No lawyer has the right to misrepresent or misstate the testimony.    On the other hand, he is not required to forego all the embellishments of oratory, or to leave uncultivated the fertile field of fancy.    It is his time-honored privilege to—

> "Drown the stage in tears,
> Make mad the guilty and appal the free,
> Confound the ignorant, and amaze, indeed,
> The very faculties of eyes and ears."

Stored away in the property room of the profession are moving pictures in infinite variety, from which every lawyer is expected to freely draw on all proper occasions They give zest and point to the declamation, relieve the tediousness of the juror's duties, and please the audience, but are not often effective in securing unjust verdicts. The sorrowing, "gray-haired parents," upon the one hand, and the broken-hearted "victim of man's duplicity," upon the other, have adorned the climax and peroration of legal oratory from a time "whence the memory of man runneth not to the contrary," and for us at this late day to brand their use as misconduct would expose us to just censure for interference with ancient landmarks.    See *Dowdell v.*

*Wilcox*, 64 Iowa, 724. Counsel for the state did not exceed the bounds of propriety in his argument, and, in any event, the order of the court and its instruction to the jury sufficiently guarded against any possible prejudice to the defendant from the remarks to which objection was made.

The verdict has sufficient support in the evidence, and we find no prejudicial error in the record. The judgment. of the district court is AFFIRMED.