## Butler v. St. Louis Life Ins. Co.

1. **Evidence:** INSANITY: HEARSAY. The physician's certificate, prepared from the statements of relatives and friends of a patient in the insane asylum, is not competent evidence to show what had been the mental condition of the patient previous to his confinement in the asylum.

2. ——: ——: RECORDS OF PUBLIC INSTITUTION. The records of a public institution must be shown to have been kept in compliance with the laws of the institution before they are admissible in evidence, and the laws themselves must be introduced to establish the fact.

3. ——: ——: OPINION OF WITNESS. The opinion of a witness who is not an expert, respecting the sanity of a person, is competent where he states all the facts upon which his opinion is founded.

4. ——: ——: EXPERT. In the trial of an issue of insanity, it is not competent for a medical expert to give his opinion respecting the testimony which has been introduced in the case, but the inquiry should be limited to his conclusion respecting the facts.

### *Appeal from Des Moines District Court.*

### MONDAY, DECEMBER 11.

THIS is an action upon a life insurance policy, insuring the life of Jacob Butler, plaintiff's deceased husband. The petition, which is in the usual form, alleges that the insurance was effected in 1864, that all premiums were paid up to the time of the death of said Butler, which occurred in 1874.

The policy contained a clause in these words: "And it is also understood and agreed to be the true intent and meaning hereof, that if the proposals, answers and declarations made by the said Jacob Butler, and bearing date June 29, 1864, and which are hereby made part and parcel hereof as fully as if herein recited, and upon the faith of which this agreement is made, shall be found in any respect untrue, then and in such case this policy shall be null and void       *       * ."

The application for insurance contained the answers and declarations referred to in the policy, and among other interrogatories propounded there is one in these words:

"Int. 14. Has the party ever been subject, since childhood, to rupture, insanity, aberration of mind, bronchitis,

general debility, paralysis, cholic, fistula, apoplexy or palpitation, fits, dropsy, asthma, liver complaint, gout, consumption, aneurism, spitting of blood, and which?"

To this interrogatory the answer was "No."

The application also contained the following question:

"26.   Is the party aware that any untrue or fraudulent allegation, made in effecting the proposed assurance, or any concealment of facts in regard to his or her health, habits or circumstances, or neglect to pay premium when it becomes due, will violate the policy, and forfeit all payments made thereon?"

To this interrogatory the answer was "Yes."

At the end of the specific interrogatories propounded and answered was the following:

"The assured will answer definitely for the information of the directors, in order that they may determine understandingly on the application, any circumstances or facts in relation to the present and past state of health of ———, and which circumstance is not included in the foregoing statement."

To this no answer or statement was made by the assured. A waving line was drawn through the blank left for such answer or statement, and the name of the applicant was signed below.

The said application also contained the following statement:

"That my age, next birth day, will be forty-seven years; and that I am now in good health, of sound body and mind, of sober and temperate habits, and do usually enjoy sound health, and that I do not nor will I practice any habits that tend to the shortening of life, and that the following answers and annexed statements are correct and true, in which I have not concealed, withheld or misrepresented any material circumstance in relation to the past or present state of my health, habits of life, or condition, which may render assurance on my life more than usually hazardous, or with which the directors of said company ought to be made acquainted.   And I do hereby agree that the preceding answers given to the annexed

questions, and the accompanying statements and this declaration shall be the basis, and form part of the contract or policy between myself and the said company, and that if the same be not in all respect true and correctly stated the said policy shall be void, and all moneys which may have been paid on account thereof, and every benefit which may accrue therefrom, shall be forfeited to said company.    *    *    *

      "(Signed,)            JACOB BUTLER."

The answer admits the execution and delivery of the policy, the payment of premiums and the death of the assured, and sets up two defenses in substance as follows:

1st. It is alleged that the answer to the fourteenth interrogatory is untrue in this, that said Jacob Butler had been subject since childhood to insanity and aberration of mind, for that on the 29th day of June, 1847, he was sent to and received in the Central Ohio hospital for the insane as a patient for treatment, and was there for twelve weeks treated for insanity and aberration of mind.

2d. That in said application the said Jacob Butler did, among other things, declare that the answers following and the statements annexed were correct and true, in which he had not concealed or withheld or misrepresented any material circumstance in relation to the past or present state of his health, habits of life or condition which might render an insurance on his life more than usually hazardous, or with which the directors of said company ought to be made acquainted; and that the said Butler did conceal, withhold and misrepresent, a material circumstance in the past state of his health, which did render an assurance on his life more than usually hazardous, and with which the directors of said company ought to be made acquainted; in this, that said Butler in said answers and statements did conceal, withhold and misrepresent the fact that on the 29th day of June, 1847, he was sent to and received in the Central Ohio hospital for the insane, and was there for a period of twelve weeks treated for insanity and aberration of mind.

Upon these issues there was a trial by jury. Verdict and judgment for plaintiff, and defendant appeals.

*P. T. Lomax* and *Craig & Collier*, for appellant.

*Hanna & Fitzgerald* and *Hall & Baldwin*, for appellee.

ROTHROCK, J.—I.  Upon the trial the defendant admitted the execution of the policy for the use and benefit of plaintiffs, and the delivery of the same to Jacob Butler in his lifetime, and due notice and proof of the death, and the payment of all premiums due the company up to the date of the death of said Butler, and took the affirmative of the issues joined between the parties.

It appears from the record before us that Jacob Butler was admitted as an insane patient in the Iowa Hospital for the insane, at Mount Pleasant, a short time before his death.  It was conceded on the trial, by plaintiff, that he was legally and formally admitted as an insane person.

The defendant introduced as a witness Mark Ranney, present superintendent of the hospital for the insane, at Mount Pleasant, who produced the admission papers, which defendant offered in evidence.  Objection was made to the introduction of the questions and answers appended to the "physician's return," which was sustained, and defendant excepted and assigns this ruling as error.

1. EVIDENCE: insanity : hearsay.

We think the questions and answers referred to were properly excluded.  Sec. 1400 of the Code provides that the physician "shall endeavor to obtain from the relations of the person in question, or from others who know the facts, correct answers so far as may be to the interrogatories    *    *    *."

The answers, then, are mere hearsay and not competent to show insanity at a previous date.  Their introduction must have been sought for this purpose, for the plaintiff conceded that the deceased was insane at the date of his admission to the hospital at Mount Pleasant.

II.  The defendant sought to introduce the record of the Iowa hospital for the insane, so far as it related to the deceased. This was objected to and excluded.  It appears that the records in question were in the handwriting of an assistant physician.  It is not shown

2. ——: ——: records of public institution.

that the record was kept pursuant to any authority or by offi-
cers in the performance of any duty. A witness stated that the
record was required by the by-laws, but such by-laws were
not produced, and could not be proved by parol evidence.
What the record contained which was material to the case we
cannot determine, as no statement is made of its contents.

III. Exceptions were taken to certain interrogatories pro-
pounded by plaintiff's counsel to A. M. Hare, Rev. A. D.
3. —: —: Robbins, and to the plaintiff, as to the mental
opinion of
witness. condition of the deceased. We are unable to
determine from the appellant's abstract to what time these .
interrogatories referred or to what extent these witnesses were
examined as to the facts upon which their opinions were based.
There is an additional abstract in which it is claimed they
were examined at length, showing a long and intimate acquaint-
ance with deceased. Whether these witnesses narrated to the
jury all the facts as to the conduct, appearance, health and
conversation of the deceased, upon which they based their
opinions, we cannot determine from the record. If they did,
there was no error in permitting them to give an opinion
founded on such facts. *Pelamourges v. Clark*, 9 Iowa, 1; *The
State v. Stickley*, 41 Id., 232; Redfield on Wills, vol. 1, p.
137, *et seq.*

IV. There was evidence introduced which tended to
prove that the deceased was insane in the year 1847, and
4. —: —: that he was taken by his friends to the Ohio
expert. lunatic asylum, and that on June 29, 1847, he
became an inmate and patient of said asylum and was
therein treated for insanity. The plaintiff introduced one
R. J. Patterson as a witness, who testified that he was
first medical assistant in the Ohio insane asylum from 1842
to the close of 1847; that he remembered Jacob Butler
well, and that he was not insane when in the Ohio asylum;
that he was admitted informally, without the usual and legal
examination or certificate, and was there for physical treat-
ment, owing to the fact that his father was an employe at
the institution; that Butler was unrestrained, at liberty to
come and go, and was not regarded as an insane patient.

After giving his opinion as to Butler's sanity, based on his personal observation and treatment, in answer to certain questions propounded to him he stated that he had heard all the testimony that had been given in the case. Plaintiff's counsel then propounded to said witness the following questions:

*Int.* "I will put this question. In view of the testimony as you have heard it, and in connection with your own knowledge of the state of Mr. Butler at the time he was in the asylum in 1847, in your opinion, was he or not, at that time, insane?"

*Ans.* "That opinion I have already expressed—that he was not insane—based upon my own personal knowledge."

The Court:—"He is giving you a hypothetical case."

*Int.* To the same as before. "I want the opinion now, with your own individual observation, from what has reached you in the testimony?"

*Ans.* "The testimony has not served to induce me to change my opinion already expressed."

These questions and answers were properly objected to by defendant. Objections overruled, and this action of the court is now assigned as error. It is not disputed that the witness was a medical expert. His opinion, based on his personal observation and treatment, was given without objection. Indeed, as it appears to us, he was a most important witness in the case. His learning, age and experience, entitled his opinion to great weight. We have each examined the question arising upon this assignment of error with care, and are forced to the conclusion that the ruling of the court was prejudicial error. The interrogatories to be put to an expert are not as to what his opinion is of the testimony, but what is his opinion, if the *facts* are as stated to him by the questioner.

Of course the hypothetical question thus stated should be based on the testimony. We might hold the ruling correct if the questions had been put conceding the testimony to be true, or in some way indicating that the witness was not left to give his opinion of the testimony. As it is, we are unable to determine from Mr. Patterson's testimony whether he believed that the witnesses as to Butler's insanity were mis-

taken in what they observed, or whether he accepted the facts as proven and still was of opinion Butler was not insane in 1847. 1 Greenleaf on Ev., Sec. 440; *Phillips v. Starr & Co.,* 26 Iowa, 349; *The State v. Felter,* 25 Id., 67.

As the judgment must be reversed for the error last above discussed, it is unnecessary that we should review the alleged errors based upon the instructions to the jury.

REVERSED.