(Scioto County Probate Court.)

IN RE GUARDIAN FOR JANE SHELLEIG, an alleged imbecile.

---

A guardian will not be appointed of a woman on the ground that she is an imbecile and incapable of managing her affairs, when it appears that she is seventy-seven years of age, her hearing is very much impaired, her memory is defective, and that she possesses certain peculiarities, when it also appears that she had managed her household affairs, paid her taxes, water rent and insurance regularly, attended to market and visited her friends, and conversed intelligently with them.

In such case the fact that such party deeded her property to her daughter in law, in consideration of being supported by her and her husband, and afterwards commenced an action to recover the property so conveyed, which action she subsequently dismissed, after becoming aware of the publicity it was causing, is no evidence of imbecility.

In such case the burden of proof of imbecility is on the party making the application for the appointment of a guardian.

---

This application was filed in the probate court of Scioto county, and was signed by N. W. Evans, J. J. Gist and Amanda Wilson, the latter a step-daughter of the respondent. The application was based upon the ground that the respondent was an imbecile and incapable of managing her affairs. Her age is seventy-seven years and her hearing very much impaired. The evidence disclosed that she possessed some peculiarities, among which was greeting her friends on the street by throwing

her arms around them in a caressing manner; and that her memory was imperfect.

Dr. P. J. Kline, a witness for the applicants, having been her family physician, on hearing the evidence of witnesses in regard to a transfer of her property; her conduct and the treatment accorded her by her son and his family subsequent to the transfer; that she had managed her household affairs, paid her taxes, water rent and insurance regularly; attended to market and visited her friends over the town; testifies that she was incapable of controlling her property and consequently an imbecile.

Four other physicians, viz: Drs. E. M. Foster, A. R. Moore, Albert Berndt and F. H. Williams, testified that, subsequent to the filing of the application, they had each made an examination of respondent to ascertain the condition of her mind, and after hearing her testify, stated that in their opinion she was not an imbecile and that she was as well preserved in mind and body as the average person of her age.

Until June 7, 1900, she owned real estate in the city of Portsmouth, valued at $7,000. On that day she transferred her entire property to her son's wife, in considreation of $1.00 and other considerations not named in the deed. Subsequent to the conveyance she became dissatisfied on account of alleged mistreatment by her son, J. C. Myers and his family and expressed her dissatisfaction to her neighbors who interested themselves in her behalf. In company with one of them, she called at the office of N. W. Evans, an attorney, with a view of instituting a suit to regain her property. Accordingly a suit was filed in the court of common pleas of Scioto county, Ohio, on November 9, 1900, to set aside the conveyance. Her son, one of the defendants, remonstrated with his mother for taking such action without previous notice to him; and for reasons not discloced by the evidence, she concluded to withdraw the suit  Her attorney declined to allow the suit to be dismissed and appeared before the probate judge and made the above application for the appointment of a guardian, relying upon the facts above stated, laying particular stress upon her conduct in regard to the disposition of her property. her desire to withdraw the suit and a possibility of her becoming a public charge.

Ball, J

. The authority of the probate court to appoint guardians for imbeciles is conferred by section 6302, Rev. Stat.  Before it can exercise that authority it must appear to the satisfaction of the probate court.

· 1  That Jane Shelleig is a resident of this county or has a legal settlement in a township thereof.

2.  That she is an imbecile.

Prior to the last amendment of said section it was also necessary to show,

3.  That such appointment is necessary for the preservation of her property.

This last provision is no longer a part of the statute

There being no dispute that Mrs. Shelleig is a resident of the city of Portsmouth, the only matter to inquire into is, is she an imbecile?

Mrs. Shelleig is some seventy-seven years of age, and has one living child, Joseph Myers. Last June she conveyed to the wife of her son the only real estate she owned, valued at some $7,000, the rent of which were her only means of support.  While the deed recites $1.00 and other good and valuable considerations, the evidence discloses that the support and maintenance of the mother was the real consideration.  The mother had offered to convey it to her son, but he directed that it be conveyed to his wife, and it was so done.

Some evidence is introduced tending to show that the treatment of the old lady was not so good after the transfer as before, and that she became very much dissatisfied, and finaly sought legal advice, with the result that on Novmber 10, last she filed a suit to set the conveyance aside.  In her petition Mrs. Shelleig sets forth that as part of the consideration, in addition to maintenance and support to be provided by her son, she was still to collect the rent from the west side of the premises conveyed.  This does not disclose a much deranged condition of her mental faculties

The testimony tending to show the failure of Mr. and Mrs. Myers to perform their part of the contract of conveyance, and the questionable treatment Mrs. Shelleig received thereafter, even if admitted to be true, however, pertinent it would be to the suit to set aside the conveyance, can have but little competency or weight in this proceeding, except as it tends to show imbecility on the part of Mrs. Shelleig, which manifestly is very small.

Physically, aside from the defective hearing, Mrs. Shelleig seems to be very well perserved for one of her years.  She administers alone to her own support and provides her own table, makes her own purchases, even to the laying in of her coal, and lives in her own rooms and apartments, keeping her own house.  She goes about the streets and calls upon her friends without assistance and converses with them intelligently.  These are not the acts of an imbecile person.

. True, she is forgetful, and may be more

susceptible to influence than formerly; but aside from the son and possibly the wife, no one else is alleged to have any influence over her. These are some of the infirmities of old age, and are not sufficient to call upon the court to appoint a guardian.

"Weakness and infirmity couple with old age, and when easily susceptible of influence which would authorize the setting aside of a will, would not amount to unsoundness to warrant the appointment of a guardian." In re Collins, 18 N. J. Eq., 253.

Again "Mere weakness of mind is not a ground of interference. If there be a capacity to manage as the result of sanity reasoning, although the management might not be such as an intelligent, vigorous and skillful mind might approve, a jury will not be justified in finding him insane." Re Schneider, 59 Penn. S., 328.

"Nor would the fact that memory is greatly impaired warrant the appointment of a guardian." 4 N, H., 60; 49 Me., 360.

"Nor would the fact that a person is less careful of his property than formerly, or subject to the influence of extravagant children, and wasting his property, justify the appointment of a guardian." Darling v. Bennett, 8 Mass., 129.

It must appear that the mind is so unsound, that it cannot apply its faculties to the management of its affairs or the government of himself." In re Linsey, 15 At. Reporter, 1 Supreme Court of Error and Appeals, N. J.

In Re Storick, 31 N. W. Rep., 584, the court charged the jury that: "The infirmity must be such as to render her incompetent to have charge of any affairs or to do any business. If it does not extend that far, then she should not be found by you incompetent. If Mrs. Storick is possessed of ordinary sagacity and insight into affairs, so that she knows how to care for her house and table and clothing; to deliver and transact ordinary affairs, and is not so insane, nor so foolish or imbecile, as to have no mind or intelligence regarding ordinary matters and affairs which she is accustomed to know, then you are not to find her incompeent."

Measured by these cases which have been cited and approved by Judge Goebel, of Cincinnati, in In re Nancy Tempest, 21 W. L. B., 301, can we say that Mrs. Shelleig is an imbecile? Without reviewing the authorities cited by complainants particularly, we will say that many of them refer to suits to set aside conveyances which are quite different suits from the one in hand, and do not question the soundness of the mind of the grantor in any case, and the others present quite a different set of facts, which is apparent on the reading of the briefs and the evidence produced in the case. The cases are not in point. The testimony most in point is that of greeting mere acquaintances on the street in an extremely friendly and caressing manner. But this is not sufficient.

Because she wished to withdraw the suit in the other court after promising to push it to the end, relied upon by complainants, and especially emphasizes in argument, is no evidence of imbecility. There is no doubt in the mind of the court that Mrs. Shelleig desired to get the property back and was laboring under the delusion that she might get it back as easily and noiselessly as she conveyed it away. But when she learned that it would become public, even before it so became, she began to regret her steps, and the great publicity given it settled the matter. This to the mind of the court is not an evidence of imbecility.

The action of Mrs Shelleig in conveying property away, to most minds and to the court, seems unwise in the extreme; but the question is not what may seem wise or unwise to others, but did Mrs. Shelleig know what she was doing when she did it: On that point the court has no doubt.

Again the burden of proof is upon the party making the application, for sanity being the normal condition of the human mind is favored by the general presumption.

The court cannot agree that Dr. Kline was the only competent medical witness, because he had heard the testimony of most of the complainant's witnesses. The other medical witnesses were given a fair understanding of that testimony and heard much of the testimony of the defense, and especially that of Mrs. Shelleig herself, and had personally consulted with her.

The court is of the opinion that they were better qualified in this particular case and that their testimony should have greater weight than even that of Dr. Kline.

While the court would be glad to give Mrs. Shelleig every facility to protect her property, yet the present application, in the light of the evidence as reviewed and the law as cited, will have to be dismissed.

*N. W. Evans* and *Duncan Livingstone,* for application

The issuing of a commission for the appointment of a guardian is a matter of discretion of the court in each case, the controlling consideration being the welfare of the lunatic. 16 Em. & Ency. Law, 2 Ed., 567; Matter of J. B. I. Milne v. Craig, 538; Ex parte Tomlinson, 1 Ves. & B., 57; Sherwood v. Sanderson, 19 Ves. Jr., 280; Ex parte Perse, 1 Malloy, 219; Owings case, 1 Bland, (Md.) 290; Morgan's case, 3 Bland, (Md.) 322; Matter of Calinn; 3

Md. Ch., 278; Matter of Chattin, 16 N. J., Eq., 496.

It is sufficient to make out that the party is unable to act with any proper and provident management, liable to be robbed by any one; under that imbecility of mind, not strictly insanity, but as to the mischief, calling for as much protection as actual insanity.   16 Em & Eng. Ency. Law, 576; 8 Ves. Jr., 66; Ex Parte Crammer, 12 Ves. Jr., 445; Sherwood v. Sanderson, 19 Ves Jr., 285; Gibson v. Feyes, 6 Ves. Jr., 267; In re Monaghan, 9 Iredell Eq., 253; Matter of Perrine, 41 N. J. Eq., 411; Matter of Conover, 28 N. J. Eq., 330; Matter of Lawrence, 28 N. J. Eq., 331; Dickenson v Blessett, 1 Dech., 268; Matter of Barker, 2 John Ch. (N. Y.), 232; Brower v. Fisher, 4 John Ch. (N. Y.), 441.

It has been held that where the alleged lunatic is wasting her property and is liable to become a charge on the town, the application can be made by any inhabitant of the town. Huyden v. Smith, 49 Conn., 83; Lord v. Walker, 61 N. H., 261; Baker v. Searle, 2 R. I., 115.

Improvident habits as affecting the applicant.   1 Beck's Med. Jur., 745; In re Carmichael, 36 Ala., 574; Henry v. Fine, 23 Ark., 417; Kenulty v. Ms., 5 Ind., 375; Noel v. Harper, 53 Pa. St., 97.

Those who, from imbecility of mind, are incapable of guarding themselves against fraud and imposition are under the special protection of the law.    Buffalaw v. Buffalaw, 2 Dev. & Bal. Chan. R., 241.

In order to warrant a court in interfering in behalf of a person to protect him against the consequences of his own mental incompetency it is not necessary that he should be an idiot or a lunatic.   It is enough if from any cause. whether by age, disease, affliction or intemperance he has become incapable of managing his own affairs.   In re Perrine, 41 N. J. Eq., 411; Ridgeway v. Darwin, 8 Ves., 65; 1 Black, Com., 304.

In Gibson v. Jeyes, 6 Ves., 267, Lord Elder says; "that upon a commission in the nature of a writ *de lunatico inquirendo*, it is not necessary to establish lunacy, but it is sufficient that the party is incapable of managing his own affairs;" and it was so held by Chancellor Kent in the matter of Barker, 2 Johns. Ch., 232.

In Dickenson v. Blessett, 1 Bick., 268, the court holds, that in a proceeding *inquirendo de lunatico* although the party is not found a lunatic, yet if he is found to be of unsound mind, or incapable of managing his estate, he is subject to the superintendence of the court.

In Messenger v. Bliss, 35 Ohio St., 587, 592, the Supreme Court of Ohio define imbecility under the statute as "that infirmity of mind termed imbecility as distinguished from idiocy or lunacy, is usually incident to extreme age, and is generally the result of a gradual decay of the mental faculties.

"When the mind becomes so weak as to render the person incapable of managing and preserving his property, this power "(to appoint a guardian)" is conferred upon the probate court."

From the foregoing propositions and authorities it is clear that in a proceeding of this kind the inquire is, as to whether or not the party is capable of taking care of and preserving her property, and the very fact of her great age, the absolute disposition and alienation of all her property upon a totally inadequate consideration, should weigh strongly as reflecting upon her mental condition.

The testimony of non- experts and the expert testimony of Dr. Kline seems to be fairly conclusive, when taken into consideration with the conveyance by the party of all her property, that the mind of Mrs. Shelleig has been so weakened by extreme age and failing physical condition that, unless some steps are taken to preserve for her use her property and the income, she will eventually become a subject of charity and a charge upon the county. Particular attention is called to the character of the expert testimony in this cause.   Under the rule in Ohio, physicians may give their opinion based upon the facts adduced in the testimony, and this was done by the applicants in this case.   But the physicians called to contest the application attempted to testify basing their opinion upon a single examination of Mrs. Shelleig, and did this for the purpose of testifying in this case.   Upon the Maine authority cited in this case, these witnesses were incompetent and it leaves the case upon the testimony of the other witnesses and the expert testimony of Dr. Klein.

As to expert testimony,   The rule in Ohio is laid down in Railroad Co. v. Schultz, 43 Ohio St., 270; 282, in numbers 3 and 4 of the propositions announced by the court in that case.   See also in this connection Cleveland & P. Railroad v. Ball, 5 Ohio St., 568, and Wallace v. Bevard, Wright, 114.   These cases announce the rule as to the competency of experts and non-experts as witnesses on the question of mental condition and insanity. No question is made anywhere but that medical men who were conversant with insanity who have made a specialty of mental diseases, and had experience with the insane, are competent to express opinions as to mental conditions, although they have not made any personal examination of the individual whose mental condition is not in dispute.   Rodger on Expert Testimony, 2 Ed., Secs. 68, 161.

When it is sought to obtain the opinion of the witness in answer to a hypotheical question, or upon testimony of other witnesses, it is held in Kentucky that if a physician is able to state that he has as a physician studied the disease of insanity he is a competent witness. Montgomery v. Com., 11 S. W., 475.

In other cases not even special study of the subject is insisted on. Schneider v. Manning, 121 Ill., 396; Guitig v. State, 66 Ind., 94.

Insanity experts. Poole v. Deave, 152 Mass., 589.

A medical witness may give his opinion as to whether the facts proved establish insanity on the part of the person under investigation. Rex v. Lenile, 1 M. & Rob., 75; Commonwealth v. Rodgers, 7 Met., 500; 41 Am. Dec., 458; Whiton v. Snyder, 88 N. Y., 299; Garfield v. Kirk, 65 Barb., 464; Beechman v. Platner, 15 Barb., N. Y., 552; Sikes v. Paine, 10 Ired., 32 N. Car., 280; 51 Am. Dec., 389.

As to the capacity of an aged person to do business. Emerick v. Emerick, 83 Iowa, 441; 13 L. R. A., 757.

See also Howard v. Howard, 87 Ky., 616; 1 L. R. A., 610.

As to hypothetical questions. See Prentiss v. Bates, 93 Mich., 234; 17 L. R. A., 494.

On sanity opinions. Armstrong v. State, 30 Fla., 170; 17 L. R. A., 494; Smith v. Hickenbottoms, 57 Ia., 733; Fairchild v. Baron, 35 Vt., 398; Bennett v. Bennett, 57 W. S., 69; Fayette v. Chesterfield, 77 Me., 28; 52 Am. Rep., 741.

Opinion of witnesses. 36 L. R. A., 64.

The witnesses must first give the facts and then they may give their opinions on the facts. Jamesson v. People, 145 Ill., 357; Butler v. St. Louis Ins. Co., 45 Ia., 93; Gold Thorp's Estate 94 Ia., 336.

The opinion must be confined to facts alone and not embrace any matter of law. Dewitt v. Bailey, 17 N. Y., 340; Pursell v. Gaudy, 46 Tex., 190; Blood's Will, 62 Vt., 359.

They can not be asked on the question of mental capacity, whether they consider the party out of his mind, or whether his mind was so affected as to be unfit to transact business. Deshon v. Merchant's Bank, 8 Bosw., 461.

Nor can they be asked to state opinions on the whole case, as that includes what are the facts. Yardly v. Culbertson, 108 Pa. St.; 56 Am. Dec., 218; In re McCarting's Will, 55 Hun., 7; Jerry v. Townsend, 9 Md., 145.

The form of the question. McMechen v. McMechen, 17 W. Va., 683; 41 Am. Rep., 682; Com. v. Rodgers, 7 Me., 51; 41 Am. Dec., 458.

In Maine it is held that a physician who made a single examination of the person, and that to qualify himself as a witness in pending litigation, was incompetent to express an opinion. The court says "skillful and reputable physicians, although not experts upon the subject, may testify to the mental conditions of their patrons when they have adequate opportunities of observing and judging of their mental qualities, but does not embrace a case where a single examination was made by a physician to qualify himself as a witness in a pending litigation." And the court further says that in a case of that kind the physician was not the attending physician, he made a single examination *pendente lite* in order to inform himself as a witness. The foregoing case was one in which an inquiry was being made of the mental condition of a pauper who was seeking to acquire a settlement. Fayette v. Chesterville, 77 Me., 28.

*James S. Thomas,* for respondent.

The probate court has no powers or jurisdiction except what is conferred upon it by statute. Constitution of Ohio, Art. IV, Sec. 8.

Probate courts as created by statute are of special and limited jurisdiction and can only do such acts as are specifically prescribed by statute. Sheldon's Lessee v. Newton 3 Ohio St., 494, 498; Gilliland v. Sellers, 2 Ohio St., 223; Davis v. Davis, 11 Ohio St., 391; Shroyer v. Richmond, 16 Ohio St., 455; D. & W. R. R. Co. v. Marshall, 11 Ohio St., 497; Walker v. Webb, F, W, L. M., 32.

It would be the safer and more satisfactory practice to have the verdict in the very language of the statute or its substance. We do not subscribe to the proposition that the term *non compos mentis* necessarily denotes a total deprivation or destruction of intellectual powers. It denotes unsoundness of mind, not mere weakness, but a diseased or unhealthy mind. That a person makes improvident bargains or many improvident bargains, that he is generally unthrifty in his business, or unsuccessful in one or many enterprises, does not *per se* prove him to be *non compos mentis.* These may co-exist with the mind perfectly and legally sound. Such testimony is certainly admissible in connection with the facts and circumstances tending to show mental aberration. Shrewdness in trade and general success in business would go far to rebut inconclusive testimony of mental unsoundness. In re Carmichael, 36 Ala., 522; 1 Beck's Med. Jur., 745.

The only authority given to the probate court to appoint guardins in cases of this kind is that conferred by section 6302, Rev. Stat. Under this section, it should be made to appear to the satisfaction of the court that the subject of guardianship is an idiot, imbecile or lunatic. Other sections of the statute pro-

vide for the appointment of guardians for minors, habitual drunkards and non-resident minors, idiots, lunatics and imbeciles. It is apparent to the court that the respondent is not an idiot or a lunatic and the applicants have failed to prove that she is an imbecile, who is a person destitute of strength of mind and body, one who is totally unable to transact business. Moreover this section contemplates the protection of property rights in the subject of guardianship. It has not been made to appear to this court that the respondent owns any property. There is nothing more claimed for her than a right of action to some real estate, and until by the judgment of a court of competent jurisdiction, this right is made into actual ownership, this court will not consider the case from a property standpoint. Obviously the object of having a guardian · appointed for the respondent is properly to maintain an action pending in the common pleas court. Will this court interpose its power by leading its jurisdiction to assist in the prosecution of a case in some other court? If a guardian is needed, the court having jurisdiction of that case has ample jurisdiction to appoint a guardian, and it is made the duty of such court to appoint a guardian under section 5000, Rev. Stat.

It will be noticed that in the cases cited by opposing counsel the element of *unsoundness of mind* enters, and it is upon this fact that the judgment of the court appointing guardians or granting commissions *de lunatico inquirendo* is based. It does not follow as a necessary conclusion that persons seventy- seven years of age are imbeciles. Extremity of age may tend only to produce imbecility of mind.

Prodigality in the dispersion of property forms no ingredients provided it appears that the party committing the extravagance saw that he was doing an improvident thing. In re Perse, 1 Malloy, 219.

Imbecility of mind may be the foundation of a commission in the nature of a writ *be lunatico inquirendo*. But this is from consideration of the *exposed condition* of such imbecile persons. *When other protection can be otherwise provided for and secured,* the court, notwithstanding its general disinclination to allow a petition to be substituted for the commission, may as in the present case, permit the case under peculiar circumstances. In re Eyre v. Make, 4 Ves. Jr., 797.

The court in the Tomlinson cases, Ves. & Beames, 57, refused to allow a commission in the instance of a lady who was unquestionably a lunatic, but was under the care of her husband who opposed the application.

· In J. B. 1 Milne & Craig, 583, the court refused to order a commission when the evidence showed that J. B. was at times violent and at times lucid. That under excitement he was unsound in mind.

Until permanent disorder is proved to exist, no presumpation of insanity can arise. Sanity being the normal condition of the human mind it is favored by the general presumption, and the burden of proof is upon those asserting the contrary. In re Nancy Tempest, 21 W. L. B., 301.

Mere weakness of mind is not a ground for interference. I bid, citing Re Schneider, 5 Pa. St., 328, and other cases.