DORR CATTLE Co., Appellee, v. THE CHICAGO GREAT. WESTERN RAILWAY Co., Appellant.

**Railroads:** TRANSPORTATION OF LIVE STOCK: DELIVERY AT INFECTED YARD. A railroad company is held to the exercise of ordinary and reasonable care in selecting a place for unloading and keeping cattle upon delivery at their destination; and evidence that defendant had shipped under quarantine regulations and unloaded diseased cattle into a certain yard, was sufficient to take the case to the jury on the question of its knowledge that such yard was infected with disease.

**Pleadings:** KNOWLEDGE OF INFECTION. The allegation that a railway company carelessly and negligently unloaded cattle into a certain yard, exposing them to disease, was sufficient to raise the question of defendant's knowledge that the yard was infected.

**Evidence:** WAIVER OF OBJECTION. Where evidence is admitted on the statement of counsel that its relevancy will be made to appear later, which is not done, a failure to move to strike it out is a waiver of the objection.

**Evidence.** A notice to a railway company as to what the owner intended to do with cattle after learning of their infection through the company's negligence, and giving the company the right to make other disposition of the cattle if not satisfied therewith, was admissible as bearing on the company's conduct after knowledge of the exposure.

**Evidence:** REPORTS OF SHIPMENT OF DISEASED STOCK: ADMISSIBILITY. Reports of live stock agents of the reloading of southern cattle at Kansas City, mailed to a government veterinary at Des Moines, notifying him of cattle shipped in quarantine, are inadmissible where the signatures are not proven and it is not shown that such an agency exists, nor that the reports

were issued by such agent, nor that they belong to a public office or are required to be kept by any officer.

**Infectious disease:** NOTICE. Courts will take judicial notice that
6 Texas or splenitic fever is infectious or contagious, and a railway company transporting such cattle is chargeable with knowledge of that fact

*Appeal from Polk District Court.—* HON. A. H. McVEY, Judge.

WEDNESDAY, JUNE 14, 1905.

ACTION at law to recover damages as a result of defendant's placing six car loads of cattle belonging to plaintiff in certain yards in the city of Des Moines, which it is claimed were infected with Texas fever. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals. —*Reversed.*

*Carr, Hewitt, Parker & Wright,* for appellant.

*Bowen & Brockett,* for appellee.

DEEMER, J. — In the year 1902 plaintiff shipped six car loads of cattle from some point in Texas to Des Moines, Iowa. The defendant received the cattle at St. Joseph, Mo., and brought them to their destination. When they arrived at the latter place, defendant took them to what are known as the "Union" or "Agar Stock Yards," and there unloaded them, where they were kept for some days. It seems that these yards were infected with Texas or splenitic fever, and that on account thereof plaintiff was compelled to ship his cattle under United States government quarantine regulations to Chicago, and there sell them for immediate slaughter, at a greatly reduced price. For the damages thus sustained it brought this action.

It appears that, although the cattle were billed and shipped to Des Moines, plaintiff requested that they be

unloaded at Milman, a small station a short distance from Des Moines, where it had theretofore had cattle delivered by the defendant; but for some reason — the exact one being a matter in dispute — they were brought on to Des Moines, and placed in the yards above referred to. It is also contended that defendant had other yards in the city of Des Moines at which the cattle might have been unloaded, but that it carelessly and negligently placed them in the Agar yards, without plaintiff's knowledge or consent. During the spring and summer of the year 1902 the Agar Packing Company had been using the yards above referred to for confining stock which had been exposed to Texas fever, and which it is claimed were shipped to it under quarantine regulations of the United States government from various points in Texas. These were shipped for immediate slaughter, and were disposed of according to law. One or more shipments made to the packing company had come over the defendant's lines, and it had taken care of the cattle and of its cars in accord with the government regulations. On account of the nature of the business carried on in the Agar Yards, a veterinary surgeon was placed in charge thereof by the Department of Agriculture, in order that all quarantine regulations might be enforced. As soon as plaintiff's cattle reached the Union or Agar Yards they were placed in quarantine by the government official, and were finally disposed of pursuant to government regulations. The trial court submitted the case on the theory that plaintiff must prove that the Agar or Union Yards were infected, or that they were so used that the government was justified in placing the cattle in quarantine; that defendant unloaded the cattle in these yards; that at said time defendant knew, or in the exercise of reasonable care should have known, that the yards were infected; and that plaintiff was damaged on account thereof.

I. Defendant assigns 25 errors upon which it relies for a reversal. First it is contended that there should have

been a verdict for the defendant for the reason that there is

**1. RAILROADS:** no testimony showing that it had any knowl-
transportation
of live stock; edge that the yards where it placed the cat-
delivery at
infected yard. tle were infected, or that there was any dan-
ger of the cattle acquiring the disease. The trial court, in
its instructions, held the defendant only to the exercise of
ordinary and reasonable care in selecting a place for the
keeping of the cattle after their arrival in Des Moines, and
also said that defendant must have known, or by the exer-
cise of reasonable care should have known, that the Agar
Yards were infected when it unloaded the cattle thereat;
else it would not be liable. This is the law of the case,
and we have to determine whether or not there was enough
testimony to take the case to the jury on these propositions.
When plaintiff first rested its case, there was not, in our
judgment, enough evidence on these propositions to justify
a submission to the jury. But, after a motion for a directed
verdict in defendant's favor had been overruled, plaintiff
was permitted to introduce additional testimony over de-
fendant's objections. There was no error in this. The
matter is so largely one of discretion on the part of the
trial court that we seldom interfere on this ground. This
additional testimony showed that defendant had carried to
Des Moines and unloaded at the Agar Yards during the
summer of 1902 several car loads of " ticky cattle " under
quarantine regulations, prior to the time it unloaded plain-
tiff's cattle at the same yards. The government regulations
and the nature of the shipments were such that the jury
may well have found that the defendant must have had
notice or knowledge of the character of the cattle previously
placed in these yards. So that we think there was enough
evidence to take the case to the jury on this proposition.

But it is said plaintiff made no such issue in its plead-
ings. It is doubtless true that it brought its action in the
belief that defendant was an insurer against such diseases
taken in the way the cattle were infected in this case, or that

defendant had the burden of justifying the loss. But the petition does state that defendant, through its

**2. PLEADINGS: knowledge of infection.** carelessness and negligence, placed the cattle in the Agar Yards, and wrongfully exposed them to infection. This was sufficient to raise the issue of defendant's knowledge, for it was necessarily involved in the charge of carelessness and negligence in placing the cattle in the infected yards. *Grinde v. M. & St. P. R. R.*, 42 Iowa, 376.

II. Aside from alleged errors in the giving and in the refusal to give certain instructions, rulings on evidence are challenged, which, so far as important, or in the least controlling, we shall now consider.

An expert was permitted to answer a hypothetical question on a promise from plaintiff's counsel that he would show the facts upon which it was based. This he did not

**3. EVIDENCE: waiver of objection.** do completely, but he made an effort in that direction. Defendant's counsel did not move to strike the answer after plaintiff's failure to show all the facts, and therefore it waived the defect in the question. Moreover, the testimony was not prejudicial in character.

Plaintiff was permitted to prove a notice given defendant as to what it intended to do with the cattle after it learned of their infection, and giving to the defendant

**4. EVIDENCE.** the right to make other disposition thereof if not satisfied. This evidence was admissible as bearing upon plaintiff's conduct with reference to the animals after it became aware of their exposure.

Plaintiff offered and there was received in evidence what purported to be daily reports of cattle reloaded at Kansas City, Mo., from southern cattle pens consigned to

**5. EVIDENCE: reports of shipment of diseased stock; admissibility.** the Agar Packing Company, and routed via the Wabash and the Chicago Great Western Railways. These bore signatures as follows: "Joseph Bruner, Live Stock Agent, B. of A. I.," and "George C. Moser, Live Stock Agent, B. of A. I."

The only identification of these papers, save testimony to the effect that it was the practice to issue such notifications when cattle were shipped in quarantine, was that the witness got them out of envelopes which came addressed to Dr. Morse, the veterinarian stationed at Des Moines, and that he took them from the envelopes. The trial court held this a sufficient prima facie identification. If the signature to these documents was required to be proved in order that they might be admitted in evidence, it is manifest that the testimony does not establish the genuineness thereof. The documents were not registers or records, but simply notification reports made to the inspector at Des Moines. They were not, so far as shown, documents belonging to any public office, nor was there any testimony that they were required to be kept by the inspector at Des Moines. There was no showing that they were in fact issued by live stock agents at Kansas City, or that there was in fact any such office or officer at that point. In other words, no foundation was laid for the introduction of this testimony. *Butler v. Ins. Co.,* 45 Iowa, 93; *Gordon v. Bucknell,* 38 Iowa, 438; *Sovereign Camp v. Grandon,* 64 Neb. 39 (89 N. W. 488.) These documents should not have been admitted. See, as supporting these conclusions, *Monarch Mfg. Co. v. R. R. Co.,* 127 Iowa, 509.

III. The trial court instructed, in effect, that defendant was chargeable with notice that Texas or splenitic fever is infectious or contagious. This was in accord with modern authority on the subject. *Grimes v. Eddy,* 126 Mo. 168 (28 S. W. 756, 26 L. R. A. 638, 47 Am. St. Rep. 653); *Kimmish v. Ball,* 129 U. S. 217, (9 Sup. Ct. 277, 32 L. Ed. 695.) And is a matter of such common knowledge that courts should take judicial notice thereof. *Furley v. R. R.,* 90 Iowa, 146, does not announce a contrary rule. All there held is that the burden was upon plaintiff to establish that defendant knew the animals were infected with Texas fever,

6. INFECTIOUS DISEASE: notice.

and that this would not be presumed simply because they came from a certain state or latitude. The instruction in question relates to the presumption of knowledge as to the character of the disease.

IV. Other instructions complained of need not be set out, as they announce well-settled rules of law. The instructions asked were either erroneous, or ·not relevant to the case as made, and there was no error in refusing them.

There is no prejudicial error in the record save that pointed out, but on account of the admission of the documents referred to the. judgment must be and it is *reversed*.